J-S40030-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| J.V., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| R.J., | : | |
| | : | |
| Appellee | : | No. 342 WDA 2015 |

Appeal from the Order dated January 26, 2015,
Court of Common Pleas, Blair County,
Civil Division at No. 2010 GN 4027

BEFORE:  FORD ELLIOTT, P.J.E., DONOHUE and STRASSBURGER*, JJ.

MEMORANDUM BY DONOHUE, J.:                          **FILED JUNE 26, 2015**

Appellant, J.V. ("Mother"), appeals from the trial court's order dated on January 26, 2015, modifying a prior child custody order with Appellee, R.J. ("Father"), regarding the custody of their minor child ("Child"), born April 15, 2010.  For the reasons that follow, we affirm the trial court's order.

In its written opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, the trial court provided the following brief description of the nature of the dispute here as follows:

> The parties to this custody action have one minor child, [G.J.], born April 15, 2010.  The parties were not married during their relationship.  They have been sharing legal and physical custody of the child under an agreement they reached which was memorialized as an Order on March 11, 2013.  This Order had the child with the Father every Sunday at 5 PM through Tuesday at 4 PM, every Wednesday at 4 PM through Thursday at 4 PM, every Friday at 12:00 noon through 4 PM and every other weekend.

*Retired Senior Judge assigned to the Superior Court.

> This arrangement resulted in many exchanges of the child, which both parties agree is stressful and not in the child's best interest. Mother requests a new schedule where the child would live solely with her during the school week and have every other weekend and extended time in the summer with the Father; Father proposes that the parties equally share physical custody on the weekdays and alternate physical custody every other weekend.

Trial Court Opinion, 3/19/2015, at 1-2.

After mediation failed to result in an amicable agreement, the trial court conducted an evidentiary hearing on January 22, 2015. On January 26, 2015, the trial court issued an order pursuant to which during week one, Father has custody from Monday morning through Wednesday morning, and Saturday morning through Monday morning, with Mother having custody from Wednesday morning through Saturday morning. Trial Court Order, 1/26/2015, ¶ 2A. During week two, the schedule is reversed, with Mother having custody from Monday morning through Wednesday morning and Saturday morning through Monday morning, and Father having custody from Wednesday morning through Saturday morning. *Id.* The parents have alternating custody on some holidays (Thanksgiving, Christmas, Easter, Fourth of July), and follow the regular schedule on others (New Year's Day, Memorial Day, Labor Day). *Id.* ¶ 2B. The trial court's order further directs each parent to keep the other informed of the child's health, progress in school, school activities, and general welfare, and to consult the other regarding major decisions affecting the child. *Id.* ¶ 11. Both parents are

entitled to receive information about the child directly from schools and health care providers, and neither party may engage in any behavior that presents a negative or hostile view of the other. *Id.* ¶ 12-13.

On appeal, Mother contends that the trial court "essentially ruled in favor of the Appellee/Father," and raises the following nine issues for our consideration and determination.

1. Whether the [trial court] erred in not giving considerable weight to the ABC Pre-School Director, Lydia E. Kenepp's testimony regarding [Father's] nondisclosure of Mother's custody rights.

2. Whether the [trial court] erred in not giving considerable weight relative to Lydia E. Kenepp's testimony regarding Father's intentional representations that Mother is not to be provided information.

3. Whether the [trial court] erred in not considering the Father's violent history, including threat of suicide and abuse of Mother, resulting in multiple Protection from Abuse [o]rders.

4. Whether the [trial court] erred in determining that the child's stability and continuity in the child's education would be served with a shared custody order.

5. Whether the [trial court] erred in not considering the Father's egregious accusations that Mother's brother sexually assaulted the child resulting in their son having to be examined by medical [p]rofessionals.

6. Whether the [trial court] erred in not considering the Paternal Grandmother's testimony, which cannot be reconciled with Lydia E. Kenepp's testimony.

7. Whether the [trial court] erred in not considering Father's and Paternal Grandmother's actions in attempting to intentionally keep Mother from receiving information from the child's Pre-School.

8.    Whether the [trial court] failed to take into consideration the level of conflict between the parties in awarding a shared custody arrangement.

9.    Whether the [trial court] erred in ordering an equal shared custody arrangement when in evaluating the custody factors a primary residential custody period in Mother would best serve the child's interests.

Mother's Brief at 3-5.[1]

We review a trial court's determination in a custody case for an abuse of discretion. *M.P. v. M.P.*, 54 A.3d 950, 953 (Pa. Super. 2012). We must accept the factual findings of the trial court if they are supported by evidence of record. *Id.* We do not make independent factual determinations and defer on credibility decisions to the trial judge, who had the opportunity to observe the proceedings and demeanor of the witnesses. *R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009). We likewise defer to the trial court regarding the weight of the evidence, and on appeal

---

[1]  In his appellate brief, Father requests dismissal of this appeal because Mother failed to timely file a designation of the contents of the reproduced record within 23 days as required by Rule 2154 of the Pennsylvania Rules of Appellate Procedure. While Rule 2188 does provide that an appellee may move for dismissal if an appellant fails to timely file a Rule 2154 designation, it does not indicate what considerations are relevant in making such a determination. As a result, this Court has concluded that the decision is within our discretion, and that a finding of prejudice to the appellee is important in this regard. *Reliance Insurance Co. v. IRPC, Inc.*, 904 A.2d 912, 915 (Pa. Super. 2006). Father has not identified any prejudice resulting from Mother's untimely filing, and in fact acknowledges that dismissal may not be appropriate because Mother did file a complete transcript of the January 22, 2015 evidentiary hearing. Father's Brief at 8. In the absence of any prejudice to Father or any impediment to effective judicial review by this Court's, we decline to grant Father's request for dismissal.

the parties cannot dictate the amount of weight the trial court placed on the evidence it received. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006). The trial judge's deductions or inferences from its factual findings do not bind this Court, but we may reject them only if they involve an error of law or are unreasonable in light of its factual findings. *See, e.g.*, *J.R.M. v. J.E.A.*, 33 A.3d 647 (Pa. Super. 2011); *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005); *Landis v. Landis*, 869 A.2d 1003, 1011 (Pa. Super. 2005).

In custody determinations, the best interest of the child is paramount. *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011). To determine the child's best interest, the trial court must consider all of the factors set forth in section 5328(a) of the Child Custody Act, which provides as follows:

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

> (14) The history of drug or alcohol abuse of a party or member of a party's household.
>
> (15) The mental and physical condition of a party or member of a party's household.
>
> (16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In a written opinion filed contemporaneously with its January 26, 2015 custody order (and repeated in its Rule 1925(a) opinion), the trial court set forth its analysis of the section 5328(a) factors.[2] Based upon our review, the certified record amply supports the trial court's findings of facts with respect to each factor.

Turning then to the specific issues raised on appeal, in her first, second, sixth, and seventh issues, Mother contends that the trial court did not place sufficient weight on the testimony of the director of Child's pre-school, Lydia E. Kenepp ("Kenepp"). Mother argues that Kenepp, an "independent witness with no agenda," testified that Father and Paternal Grandmother "did everything possible to prevent [M]other from being

---

[2] The trial court did not specifically address factor 2.1, added by legislative amendment effective January 1, 2014. In its written opinion, however, the trial court considered and discussed the sole issue of child abuse in this case (the alleged touching of Child by Mother's brother), and found that it had been professionally evaluated and determined to be without any merit. Trial Court Opinion, 3/19/2015, at 10. Moreover, the trial court concluded (and the parties do not dispute) that "[t]here is no physical abuse or sexual abuse of the child alleged against either parent in this case." *Id.* at 3. Finally, there is also no evidence of record that Child has ever been the subject of proceedings pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301 *et seq.* (juvenile protective services).

involved in and informed regarding [Child's] pre-school." Mother's Brief at 9. Mother thus posits that this behavior "proves Father cannot be trusted to encourage contact between [Child] and [M]other." *Id.*

The trial court understood Kenepp's testimony somewhat differently. The trial court determined that while Father "acted at one point in a manner that gave the pre[-]school the mistaken impression that Mother was not involved in the child's life," he never lied to Kenepp. Trial Court Opinion, 3/19/2015, at 8-9. The trial court noted that Kenepp testified only that she had the impression that Father had sole custody, and that Father never actually told her this.[3] *Id.;* N.T., 1/22/2015, at 147 ("he did not lie"). The pre-school's records had Mother listed as an emergency contact for the Child (albeit third in line behind Father and Paternal Grandmother), and Father had advised Kenepp that Child could be released into Mother's care. N.T., 1/22/2015, at 146. Mother's attendance at the Christmas program was evidence that some pre-school related information had been shared with Mother. Trial Court Opinion, 3/19/2015, at 9.

---

[3] Kenepp testified that on at least one occasion, Paternal Grandmother advised her that Mother had no custody rights. N.T., 1/22/2015, at 146 ("she has no rights"). Paternal Grandmother denied this contention, testifying that she never said this and instead was present when Father advised Kenepp that Mother and Father had joint custody. *Id.* at 85, 90-91. The trial court concluded that this conflicting testimony was likely more of a "miscommunication rather than deliberate falsehoods." Trial Court Opinion, 3/19/2015, at 11. The trial court indicated that it considered Paternal Grandmother's testimony, but gave it less weight than it did to Mother's and Father's testimony. Trial Court Opinion, 3/19/2015, at 11.

As the trial court correctly asserts, section 5328(a) requires only that each of the factors be **considered**, and that (except with respect to safety) the weight to be accorded to each factor is for the trial court to determine. *Id.* at 9; *Ketterer*, 902 A.2d at 539. The trial court clearly considered Kenepp's testimony, but decided "it did not outweigh the Mother['s] and Father's testimony" regarding the Child's education. Trial Court Opinion, 3/19/2015, at 10. As a result, we find no abuse of discretion.

For her third issue on appeal, Mother contends that the trial court did not consider Father's violent history. Again, however, the record reflects that the trial court did consider this evidence, but did not place as much weight on it as Mother would have liked. The trial court noted that Mother had obtained a temporary PFA against Father after she claimed that he said that he would shoot her in the head. *Id.* at 3. Father testified that he said he would shoot anyone who sexually abused his child. *Id.* The trial court determined that Father's testimony on this point was more credible. *Id.* at 9. The trial court also indicated that the PFA had been dropped after both parties agreed to a "no contact" provision between them in the custody order, *id.* at 3, and that Mother would likely not have agreed to do so if she feared for her safety or that of Child. *Id.* at 9 ("The parties have been sharing the child with no new allegation of abuse."). Finding that Father posed no safety risk to Child, the trial court did not accord this factor any

special weight, and we cannot conclude that this decision constituted an abuse of discretion.

For her fifth issue on appeal, Mother argues that the trial court erred in not considering Father's "egregious allegations" that Mother's brother had sexually assaulted Child. This trial court did consider this evidence, indicating that the "credible evidence was that [Child] told Father and his fiancée that mother's brother touched him." *Id.* at 10. Father decided to take action in response because Mother's brother is a convicted sex offender (having pled guilty to statutory assault on a girl). *Id.*; N.T., 1/22/2015, at 30-31, 102. A sexual abuse evaluation resulted in no finding that the uncle had in fact acted inappropriately. *Id.* at 103. Contrary to Mother's allegations that Father fabricated these allegations to cause her distress and gain an upper hand in the custody battle, the trial court instead determined that Father had not done so, and that instead Child was an "intelligent and strong willed child" who had issues with controlling his behavior and made up this story to manipulate the parties. *Id.* at 5. The trial court considered this evidence but chose not to accord it any significant weight in its final custody determination.

For her eighth issue on appeal, Mother contends that the trial court failed to consider the level of conflict between the parties when ordering shared custody. The trial court indicates that the new custody order requires fewer exchanges than did its predecessor, and that "[t]his

arrangement is not ideal but has been working for them." *Id.* at 12. As a result of the "no contact" agreement, the Paternal Grandmother serves as the third party to facilitate custody exchanges. *Id.* As the trial court correctly noted, this Court has stated that only minimal cooperation is necessary for a shared custody arrangement.

> This feature does not translate into a requirement that the parents have an amicable relationship. Although such a positive relationship is preferable, a successful joint custody arrangement requires only that the parents be able to isolate their personal conflicts from their roles as parents and that the children be spared whatever resentments and rancor the parents may harbor.

*In re: Wesley, J.K.*, 445 A.2d 1243, 1249 (Pa. Super. 1982) (quoting *Beck v. Beck*, 86 N.J. 480, 498, 432 A.2d 63, 71-72 (1981)). Accordingly, the trial court determined that there was sufficient cooperation between the parents to facilitate the current custody arrangement, and we find no abuse of discretion in this regard.

Finally, for her fourth and ninth issues on appeal, Mother contends that the trial court erred in its consideration of the section 5328(a) factors when ordering a shared custody arrangement. Mother argues that Father's actions display "sabotage and ill-will" on his part, but as discussed hereinabove, the trial court's review of the relevant evidence resulted in far less severe characterizations of Father's behavior. Mother also claims that because of the lack of cooperation between the parents, shared custody will result in

Child living "two different lives." Mother's Brief at 8. Because Child will live separately with Mother and Father under any reasonable custody arrangement, however, Child living "two different lives" is inevitable, and Mother's proposed resolution (with Child living with Father on alternate weekends and during the summer months) would not rectify this eventuality.

In sum, we find no abuse of discretion in the trial court's analysis of the section 5328(a) factors or its decision to implement a new (and less complicated) shared custody arrangement. The trial court properly considered all of the relevant factors, made the necessary and appropriate credibility and weight determinations, and concluded that shared custody, rather than primary residential custody with Mother, was in Child's best interest. As a result, this Court cannot and will not disturb the trial court's decision.

In his appellate brief, Father indicates that the parties were in agreement that a new custody order should include a provision to permit for summer vacations, but that the trial court failed to include it in the January 26, 2015 custody order. As a result, Father requests that this Court enter an order providing that each party shall have seven consecutive days of custody during the summer months upon proper written notice to the other party. Father's Brief at 11-12. It is not this Court's typical function to modify the custody orders of trial courts in this manner, however, and we

decline to do so here. Instead, the parties may seek a change in the January 26, 2015 custody order from the trial court in accordance with applicable modification procedures.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2015